UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Miami Division)

CASE NO.: 1:18-cv-25429-MGC

MAITE MARTINEZ,

    Plaintiff,

v.

CHERRY BEKAERT, LLP, a foreign for
profit corporation,

    Defendant.

_____/

**DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT WITH PREJUDICE**

COMES NOW Defendant, CHERRY BEKAERT, LLP (hereinafter "CB"), by and through the undersigned counsel, pursuant to Fed. R. Civ. P. 12(b)(6), and hereby moves this Court for the entry of an Order granting this Motion to Dismiss the Plaintiff's Amended Complaint (DE 11) with prejudice, and in support thereof states as follows:

**I.**    **Procedural History.**

On December 26, 2018, the Plaintiff filed this lawsuit against CB alleging the exact same causes of action that are included in the Amended Complaint that is the subject of this Motion. *See DE 1*. In response, CB filed a Motion to Dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) and (6). *DE 10*. Thereafter, on February 11, 2019, the Plaintiff filed an Amended Complaint that included one material difference from the initial Complaint. *DE 11*. Particularly, the Amended Complaint included the below new allegations that were

directed towards the statute of limitations argument set forth in the in the initial Motion to Dismiss:

> 42. The harassment and intimidation by the Representative was not limited to or by a single case that Martinez was working on. The harassment and intimidation was perpetrated by the Representative against Martinez on a continuing basis until the date that Martinez was forced to resign her position at Cherry Bekaert.
>
> 43. The harassing acts were part of a continuing practice or pattern of discrimination perpetrated against Martinez, and ignored by Cherry Bekaert.

*Id. at ¶¶ 42-43.*

While the Amended Complaint includes the above allegations that may preclude a statute of limitations argument at this stage of the pleadings, the Amended Complaint fails to rectify the other well-founded arguments for dismissal set forth in this Motion. Specifically, the Amended Complaint remains founded on an unsupportable theory of law. The Plaintiff cannot plead her way out of the fact she is attempting to sue her former employer, CB, based on alleged harassment and bullying by an adversary accountant expert employed by an entirely separate company whose objective was to contest and debate the Plaintiff's position on everything in a contentious divorce case.

II. **Allegations in the Amended Complaint.**

The Plaintiff is a Certified Public Accountant who previously worked for CB, an accounting firm that has an office in Coral Gables, Florida. *DE 11, at pg. 1.* The Plaintiff acknowledges CB gave her annual monetary raises and eventually promoted her to the position of litigation support manager primarily for CB's family law accounting support practice. *Id. at pgs. 1-2.* The Plaintiff resigned from CB on December 28, 2017. *Id. at ¶ 44.*

Almost exactly one year after her resignation, on December 26, 2018, the Plaintiff filed the present lawsuit against her former employer arguing causes of action for Sex Discrimination under the Florida Civil Rights Act (FCRA), Hostile Work Environment under Title VII of the Civil Rights Act (Title VII) and the FCRA, and Retaliation under Title VII and the FCRA.

In every lawsuit arguing employment discrimination the Complaint portrays a villain who was the alleged discriminator within the workforce. What makes this case unique is the fact that the villain was a non-party accountant and the Plaintiff's adversary expert in a divorce case. <u>He was never employed by CB or under its control in any way</u>. *Id. at pg. 2.* In this respect, the Plaintiff's theory of liability is summarized as follows: "(w)hile performing her duties, Martinez was harassed and threatened by several individuals who were not Cherry Bekaert employees, but were employed as experts hired by opposing counsel." *Id.* [1] "While working on a family law related case, as the litigation support manager assigned to the case, Martinez was harassed and threatened by the opposing accounting firm's representatives." *Id. at ¶ 23.* The Plaintiff claims that the opposing experts - who did not work for CB - bullied her and used profane language in emails directed towards the Plaintiff and Mr. Philip Schecter, another partner who worked for CB at the time. *Id. at ¶¶ 23-24, 29.* The Plaintiff complains that "Schecter did very little or nothing to intervene" and confront the non-CB aggressor in connection with the bullying. *Id. at ¶¶ 28, 34.*

The Plaintiff also alleges that after receiving a dissatisfactory response from Schecter, on September 12, 2016, she notified her litigation department managing partner, Mr. Scott Moss, about the inappropriate behavior on the part of non-CB employees. *Id. at ¶ 37.* In

---

[1] The Plaintiff and CB were retained as accounting experts for one spouse in the Divorce Case, while the alleged non-CB accountant aggressor was retained as the adversary accounting expert for the other spouse.

- 3 -

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX

response, the Plaintiff claims CB's litigation department manager told her "to ignore [the Representative]." *Id.* at ¶ 39.

The Plaintiff alleges that the harassment and the threats from the non-CB adversary accountants caused her to suffer from two seizures. *Id. at pg. 2*. The Plaintiff believes that "(a)fter the seizures, Martinez noticed that the number of cases she was assigned decreased and she was frequently told that her presence in court, at mediations and depositions was now 'not required.'" *Id*. The Plaintiff resigned from CB on December 28, 2017, because she felt the harassment at work by the non-CB adversary accountants had negatively affected her job. *Id. at pgs. 2-3, ¶ 44*.

The Court should dismiss this case against CB with prejudice because: (1) CB cannot be held liable for alleged improper conduct of non-CB employees over whom CB had no control as a matter of law, and (2) the Plaintiff fails to allege that she ever complained to CB that the non-CB employees were treating her differently because of her gender.

### III.  Motion to Dismiss Standard.

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the Complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, (1957) (quoting Fed. R. Civ. P. 8(a)). To survive a 12(b)(6) motion to dismiss, the complaint "does not need detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007), but must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," *Conley v. Gibson*, 355 U.S. 41, 47 (1957). *See also Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010).

### IV. Memorandum of Law.

**A. The Plaintiff cannot sue CB for alleged improper conduct on the part of non-CB employees.**

The Complaint should be dismissed with prejudice because neither Title VII nor the FCRA may be used to hold CB responsible for alleged improper conduct on the part of non-CB employees.

Title VII provides that it is an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The liability of an employer may only be established in one of two ways. First, "an employer may be held indirectly, or vicariously liable for hostile environment . . . harassment: (1) when a harasser is acting within the scope of his employment in perpetrating the harassment, and (2) when a harasser is acting outside the scope of his employment but is aided in accomplishing the harassment by the existence of the agency relationship." *Joseph v. Publix Super Mkts.*, 983 F. Supp. 1431 (S.D. Fla. 1997). Second, an employer may be "directly liable for hostile environment . . . harassment if it knew, or upon reasonably diligent inquiry should have known, of the harassment and failed to take immediate and appropriate corrective action. *Id.*; *See generally Reynolds v. CSX Transp. Inc.*, 115 F.3d 860, No. 95-3364 (11th. Cir. 1997); *Steele v. Offshore Shipbuilding Inc.*, 867 F.2d 1311 (11th. Cir. 1989*); Huddleston v. Roger Dean Chevrolet, Inc.,* 845 F.2d 900 (11th. Cir. 1988). To be indirectly liable, the harassment must be accomplished by an instrumentality of the agency or through conduct associated with the agency status. *Joseph,* 983 F. Supp. 1431.

To establish a hostile work environment harassment claim under Title VII, the plaintiff must show: (1) that she belongs to a protected group; (2) that the employee has been subject to unwelcome harassment; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable. *Reeves v. C.H. Robinson Worldwide, Inc.,* 594 F.3d 798, 808 (11th Cir. 2010).

Here, the Plaintiff's claims are fundamentally flawed since there is no basis for holding CB liable. The Plaintiff attempts to hold her former employer liable for alleged harassment and bullying by the competing accounting expert who worked for an entirely separate accounting firm in a contentious divorce case. Undeniably, the alleged harasser was not acting within the scope of his employment when the harassment took place since the harasser was not employed by CB, and the harasser did not maintain an agency relationship with CB. To the contrary, the alleged harasser was the adversary expert to CB in the divorce case. Therefore, CB cannot be held indirectly liable for the harasser's alleged conduct. *Joseph*, 983 F. Supp. 1431.

Under an apparent direct liability theory, the Plaintiff's theory that CB can be held liable for failing to prevent the alleged harassment by a non-CB accountant is not a recognized basis to sue CB under the causes of action alleged. Indeed, CB had no authority or control over the alleged harasser that would put CB in a position to stop the alleged harassment and bullying from continuing.

The Plaintiff attempts to expand the basis to hold an employer liable in a manner that is not recognized under the law. Because the Plaintiff's theory for liability attempts to expand

the law, there is little case law that evaluates an analogous theory. In *Neal v. Manpower Int'l, Inc.*, a plaintiff attempted to hold a defendant liable for staffing one of its employees at an entirely separate company where alleged discrimination took place. *Neal v. Manpower Int'l, Inc.*, 2001 U.S. Dist. LEXIS 25805 (N.D. Fla. 2001). The Court in *Neal* recognized the inherent problems with trying to hold an employer liable for actions undertaken by an entirely separate company. *Id.* at *32 (Since Wayne-Dalton supervisors are Wayne-Dalton employees, Manpower neither has an "opportunity to guard against [their] misconduct," nor to "screen them, train them, and monitor their performance")(citing *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)).

Yet, the Plaintiff's theory of liability is much more attenuated than the facts found in the *Neal* decision. The alleged harasser was not a CB employee and the Plaintiff's allegations make it clear that the outside adversary accountant was bullying her from his own accounting firm, not within the CB premises. The Plaintiff clearly takes issue with CB's inability or efforts to stop the alleged harassment. Yet, undeniably CB had no authority or control over this alleged harasser as the harasser worked for an entirely separate accounting firm and was serving as the adversary's expert in the divorce case. CB's lack of control over the alleged harasser is dispositive to the Plaintiff's efforts to hold CB liable under Title VII or the FCRA for the alleged wrongful conduct of the non-CB adversary accountant.

Consequently, the Court should dismiss the Complaint with prejudice.

**B. The Plaintiff never complained the non-CB adversary accountant was harassing her based on gender.**

The Complaint should be dismissed because the Plaintiff never complained to her superiors at CB that the alleged wrongful conduct by the non-CB adversary accountant was based on her gender.

Title VII prohibits retaliation after an employee has protested discrimination based on race, color, religion, natural origin, or gender. 42 U.S.C. § 2000e-2. But, Title VII does not protect persons from a coworker's bullying that is unrelated to their membership in a protected class. *See Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002). An employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of Title VII. *Id.* In order to hold a plaintiff's employer responsible for illegal gender discrimination, the employee needs to show that she complained to her supervisor that she was being targeted or treated unfairly as a result of her gender. *See Yancick v. Hanna Steel Corp.,* 2010 U.S. Dist. LEXIS 4135 (C.D. Ill. 2010).

The Plaintiff's Complaint sets forth that she brought the bullying and harassment to the attention of two CB employees. *DE 11 at ¶¶ 23-40.* The Complaint states that the Plaintiff felt offended and threatened by the actions of the non-CB adversary accountant. *Id.* Yet, the Plaintiff never alleges she advised CB that she felt that the inappropriate behavior on the part of the non-CB adversary accountant was based on her gender or any other protected basis. *Yancick,* 2010 U.S. Dist. LEXIS 4135 (finding a lack of prima facie case of retaliation under Title VII by stating "(w)hile Plaintiff did complain that Johnson's actions were inappropriate, bizarre, and disturbing, there is no showing that he indicated that he believed Johnson was acting in this manner because of his race. Failure to report the harassment (as racial harassment) is fatal to Plaintiff's claim. Defendant can hardly be expected to treat Johnson's inappropriate behavior as racial harassment if there never was a complaint that his behavior was anything more than juvenile and inappropriate behavior."); *see also Carr v. Estes Express Lines*, 2015 U.S. Dist. LEXIS 150320 (D.C. Kansas 2015).

Case No. 1:18-cv-25429-MGC

Nowhere does the Plaintiff allege that she advised CB of her belief that the bullying or harassment was based on the Plaintiff's gender, thereby elevating her complaint from mere bullying or adversarial disputes to illegal conduct protected by Title VII or the FRCA. As a matter of law, CB cannot be held liable under Title VII or the FCRA if the Plaintiff never put CB on notice of her belief that the inappropriate behavior was based on her being part of a protected class. As a result, the Complaint fails to state a claim under which relief may be granted, and the Complaint should be dismissed pursuant to F.R.C.P 12(b)(6).

WHEREFORE, Defendant, CHERRY BEKAERT, LLP, pursuant to Fed. R. Civ. P. 12(b)(6), respectfully requests that the Court issue an Order dismissing this action with prejudice, and for such other relief the Court deems just and proper under the circumstances.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of February, 2019, a true and correct copy of the foregoing has been furnished by electronic filing with the Clerk of the court via CM/ECF, which will send notice of electronic filing to all counsel of record.

[Intentionally left blank]

Case No. 1:18-cv-25429-MGC

COLE, SCOTT & KISSANE, P.A.
Counsel for Defendant CHERRY BEKAERT,
LLP, a Foreign for profit corporation
Cole, Scott & Kissane Building
9150 South Dadeland Boulevard, Suite 1400
P.O. Box 569015
Miami, Florida 33256
Telephone (786) 268-6415
Facsimile (305) 373-2294
Primary e-mail: cody.german@csklegal.com
Secondary e-mail: andrew.simon@csklegal.com
Alternate e-mail: magaly.triana@csklegal.com

By: s/ John Cody German
JOHN CODY GERMAN
Florida Bar No.: 58654
ANDREW G. SIMON
Florida Bar No.: 1002623

1620.0109-00/13141281

Case No. 1:18-cv-25429-MGC

## SERVICE LIST

Lowell J. Kuvin, Esquire
*Attorneys for Plaintiff*
Law Office of Lowell J. Kuvin
17 East Flagler Street
Suite 223
Miami, Florida 33131
Tel: 305-358-6800
lowell@kuvinlaw.com